Argued and submitted December 21, 2012, affirmed May 30, 2013

In the Matter of the Compensation of
Burke Rivers, Claimant.
Burke RIVERS,
*Petitioner,*

*v.*

SAIF CORPORATION
and Roger Langliers Construction, Inc.,
*Respondents.*

Workers' Compensation Board
1100635; A150153

304 P3d 770

Jodie Anne Phillips Polich argued the cause for petitioner. With her on the briefs was Law Offices of Jodie Anne Phillips Polich, P.C.

Holly C. O'Dell argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

### HADLOCK, J.

Claimant seeks review of an order of the Workers' Compensation Board, challenging the board's conclusion that respondent SAIF Corporation correctly calculated his earnings for purposes of determining temporary disability compensation. Claimant also challenges the board's conclusion that he is not entitled to a penalty and attorney fees based on SAIF's refusal to award a greater amount of disability compensation. For the reasons set forth below, we affirm.

The salient facts in this case are uncontested. Claimant was working for employer, a construction company, when he suffered a low back injury in 2007. Claimant returned to work on February 2, 2008, serving as an apprentice construction laborer. While claimant held that position, employer dispatched him to various construction-related jobs, and claimant's rate of pay depended on the type of project to which he was assigned. Specifically, the board found, claimant received $15.98 per hour when he worked on "private contract" jobs, but he received the "prevailing pay rate of $33.70 per hour" when he worked on projects involving "a public works or other 'prevailing rate' type of job[.]"[1] In February and March 2008, claimant worked both on private contract jobs and on public works projects. As is relevant here, from March 11 through 19, claimant earned $33.70 per hour for his work on a U.S. Highway 97 re-routing job in Bend.

Claimant sustained a low back injury on March 19, 2008, when he was working on the Highway 97 job, and he filed a workers' compensation claim with employer's insurer, SAIF. Among other benefits, claimant sought temporary total disability compensation under ORS 656.210, which generally provides that such compensation will be based on the worker's "average weekly wage." ORS 656.210(1). To calculate claimant's average weekly wage and, therefore, the amount of temporary disability compensation payable for claimant's 2008 injury, SAIF averaged the wages that claimant had

---

[1] The prevailing rate of $33.70 per hour consisted of an hourly wage of $23.15 plus hourly fringe-benefit pay of $10.55. In addition to the rates for private and public projects, claimant received a separate, lesser rate for driving and shop time.

received for all of his work assignments from employer between February 2 and March 19, 2008, and paid him compensation based on that calculation.[2]

At a hearing before an administrative law judge (ALJ), claimant argued that SAIF had incorrectly applied the provisions of OAR 436-060-0025(5), which governs the method of calculating the average weekly wage of workers who, like claimant, are "regularly employed, but paid on other than a daily or weekly basis[.]"[3] The pertinent part of that rule provides that the calculation will be based on the terms of "the most recent wage earning agreement":

"(a)   For workers employed seasonally, on call, paid hourly, paid by piece work or with varying hours, shifts or wages:

"* * * * *

"[B](ii)   Where there has been a change in the wage earning agreement due to a change of hours worked, change of job duties, or for other reasons either with or without a pay increase or decrease, during the 52 weeks prior to the date of injury, insurers must average earnings for the weeks worked under the most recent wage earning agreement, calculated by the method described in (5)(a)(A).

"(iii)   For workers employed less than four weeks under a changed wage earning agreement as described in this subsection, insurers must use the intent of the most recent wage earning agreement as confirmed by the employer and the worker."

Claimant argued that, under OAR 436-060-0025(5)(a)(B), his average weekly wage should be calculated using only the rate of payment for his last work assignment, the Highway 97 job, which was $33.70 per hour. Claimant maintained that "each and every time that he was sent out to a job * * * there

___

[2] SAIF initially made a mistake in that calculation, resulting in an erroneously low average weekly wage, but it later corrected the error.

[3] That rule implements ORS 656.210(2)(e), which authorizes the director of the Department of Consumer and Business Services to adopt rules that "prescribe methods for establishing the worker's weekly wage" for workers "whose remuneration is not based solely upon daily or weekly wages." *See Tye v. McFetridge*, 342 Or 61, 68, 149 P3d 1111 (2006) (a claimant who is "paid an hourly wage, based on the number of hours that he worked in a given week" is not remunerated "'based solely upon daily or weekly wages'") (quoting ORS 656.210(2)(e)).

was a change in the wage earning agreement." As we understand it, claimant's position was that his assignment to the Highway 97 job itself constituted his "most recent wage earning agreement." Given that the highway job lasted less than four weeks, claimant argued that OAR 436-060-0025(5)(a)(B)(iii)—which references "workers employed less than four weeks under a changed wage earning agreement"—applied to his claim for compensation and required SAIF to determine his temporary disability compensation based only on the time he worked on that project. In addition, claimant contended that he was entitled to a penalty and attorney fees because SAIF had impermissibly delayed payment of the full amount of the disability compensation that claimant alleged was due.

In response, SAIF asserted that the only "change" in claimant's wage-earning agreement occurred when claimant returned to work in February 2008. Thus, SAIF impliedly took the position that the "most recent wage earning agreement" between employer and claimant was their overarching agreement, formed in February 2008, which provided that employer would assign claimant to different construction projects at different rates of pay. Accordingly, SAIF argued, claimant's compensation properly was based on an average of his earnings from February and March. SAIF further asserted that claimant was not entitled to a penalty or attorney fees because there was "no demonstration that the Claimant's time loss rate should be anything higher than what [it] paid."

The ALJ agreed with SAIF that the Highway 97 job assignment was not a "change" in claimant's agreement to accept job assignments from employer:

"[A]fter claimant returned to regular work following the 2007 injury, his wage earning agreement with the employer included the expectation that he would be dispatched to different construction projects as needed and that his work hours and pay rate would be determined by the type of project involved. * * *

"Given [that] expectation * * *, I do not find that claimant's assignment to [the Highway 97 job] constituted a change in the wage earning agreement. Rather, it represented a continuation of the same wage earning agreement * * *."

Accordingly, the ALJ concluded that SAIF had correctly calculated claimant's compensation by averaging his wages from February and March, and he denied claimant's request for increased compensation, as well as the associated request for a penalty and attorney fees. Claimant requested review of that decision before the board, which adopted and affirmed the ALJ's order.[4] Claimant then petitioned this court for review.

On judicial review, the parties largely reiterate the arguments they made below. For his part, claimant argues that the board erred (1) in determining that calculation of his earnings is governed by OAR 436-060-0025(5)(a)(B)(ii) rather than subsection (iii); and (2) in denying his request for a penalty and attorney fees under ORS 656.262(11)(a). SAIF responds (1) that substantial evidence supports the board's order; and (2) that the board's denial of claimant's request for a penalty and attorney fees was correct because SAIF "had a reasonable doubt that claimant and his employer entered into a changed wage earning agreement when claimant was assigned to the US 97/Bend Project." We address claimant's arguments in turn, reviewing the board's order for legal error, as well as for substantial evidence and reason. ORS 183.482(8); *SAIF v. Ramos*, 252 Or App 361, 363, 287 P3d 1220 (2012).

To determine whether the board erred in deciding that the Highway 97 job assignment did not "change" the February 2008 agreement so as to replace that general employment agreement with a *new*, "most recent wage earning agreement," we first consider the board's findings about the

---

[4] One member of the board dissented, stating, in relevant part:

"In sum, subsection (ii) of the rule applies if the change in the wage earning agreement occurred when claimant returned to work after his injury in February 2008 * * *. Subsection (iii) applies if the change in the wage earning agreement occurred when he started working on the [Highway 97 job] where he was injured * * *.

"Because claimant's wages, hours, and work sites varied continually, the majority finds that these variations defined the wage earning agreement. Under my approach, each of claimant's jobs is the subject of a changed and more specific wage earning agreement. I submit that this approach is more consistent with the nature of claimant's work and therefore a more logical reading of the administrative rule."

February 2008 agreement, which the board adopted from the ALJ's order:

> "[Claimant's] wage earning agreement with the employer included the expectation that he would be dispatched to different construction projects as needed and that his work hours and pay rate would be determined by the type of project involved. Claimant testified that he worked as an apprentice construction laborer and was dispatched to various construction projects. He testified that the number of hours he worked varied depending on the duration of the project and that his pay rate varied depending on whether the project was a private contract job, which paid a regular hourly rate of $15.98, or a public works or other 'prevailing rate' type job, which paid the prevailing hourly rate of $33.70. He testified that he did not negotiate his rate of pay for any project and was simply told what project he was being dispatched to and what the pay rate was for that project. * * *"

Based on those findings, the board agreed with the ALJ that, "[g]iven the expectation [in the February 2008 agreement] that claimant would be dispatched to different projects and that his hours and pay rate would vary depending on the type of project involved," claimant's March 11 assignment to the Highway 97 project did not "constitute[] a change in the wage earning agreement."

Claimant does not argue that the factual findings quoted above lack substantial evidentiary support in the record.[5] Nor do we understand claimant to be arguing that the board's order lacks substantial reason; that is, claimant does not contend that the board's conclusion does not logically follow from its factual findings. Rather, we view claimant's argument as raising purely legal questions: whether the board correctly interpreted OAR 436-060-0025(5) and applied the appropriate subsection of the rule in this case.

Moreover, although claimant frames his argument primarily in terms of which subsection of OAR 436-060-0025(5)(a)(B) applies to his claim, the fundamental question is what constituted "the most recent wage earning agreement," for purposes of the rule, when claimant was injured

---

[5] Although claimant mentions the substantial evidence standard of review in his briefs, he does not develop any argument based on that standard.

on March 19, 2008. No matter which subsection of the rule applies, the average weekly wage is based on "the most recent wage earning agreement," either calculated by averaging the earnings worked under that agreement (if OAR 436-060-0025(5)(a)(B)(ii) applies) or based on "the intent" of that agreement (if subsection (iii) of the rule applies). Accordingly, we start by considering the meaning of "the most recent wage earning agreement" as it is used in the administrative rule.

OAR 436-060-0025 contemplates that a "wage earning agreement," whether oral or in writing, reflects the terms of an "employment relationship" between a worker and an employer. OAR 436-060-0025(5)(a)(A). The rule specifically uses that phrase to refer to an agreement between an employer and a worker who is regularly employed but who is "paid on other than a daily or weekly basis" or who is "employed with unscheduled, irregular or no earnings[.]" OAR 436-060-0025(5). The rule also describes circumstances that arise when the "wage earning agreement" has undergone a "change," and it explains how the average weekly wage must be calculated in each of those situations. OAR 436-060-0025(5)(a)(B)(i) - (iii). In both of the circumstances possibly implicated here, the result of any change is that the worker's average wage must be calculated according to "the most recent wage earning agreement." OAR 436-060-0025(5)(a)(B)(ii), (iii).

When considered together, those provisions establish that "the most recent wage earning agreement" refers to the agreement that was in place when the claimant was injured. Moreover, the provisions contemplate that any pertinent "change" to a wage earning agreement will have occurred before the injury. Thus, when the rule refers to a "change" in the wage earning agreement, it describes a situation in which one wage earning agreement has been supplanted by a new wage earning agreement, *i.e.*, "the most recent wage earning agreement" in place at the time of injury.

Applying that understanding of the rule to this case, we must determine whether the board erred in determining that "the most recent wage earning agreement" was the broad February 2008 understanding between claimant and employer, which had not "change[d]" when employer assigned

claimant to the Highway 97 project. If that overarching understanding was the most recent wage earning agreement, then SAIF correctly determined claimant's average weekly wage by averaging his earnings on all jobs to which he was assigned in February and March 2008. As noted, claimant argues, in essence, that the wage earning agreement did "change"—as a matter of law—when he was assigned to the Highway 97 project in March. Consequently, he contends, the most recent wage earning agreement must consist of the terms governing his work on that project, including the $33.70 hourly rate of pay.

We do not agree with claimant's narrow interpretation of the term "wage earning agreement." Claimant's argument rests on the fact that, when he was assigned to the Highway 97 project, his work location changed, along with his hourly wage and the number of hours worked. It is true that some changes in hours worked, job duties, or the rate of pay may be the result of, or be reflected in, a new wage earning agreement entered into by a worker and his or her employer. But OAR 436-060-0025 does not specify that *every* change in the rate of pay or hours worked will result, as a matter of law, in a new "wage earning agreement" for purposes of the rule. If that were so, it would not make sense for the rule to go on—as it does—to provide for the averaging of weekly wages over a period of time. OAR 436-060-0025(5)(a)(B)(i), (ii). To the contrary, those provisions explicitly contemplate that a worker's earnings *will* fluctuate during the lifetime of a single wage earning agreement.

Instead, we agree with the board that the "wage earning agreement" between a worker and his or her employer may be a general agreement reflecting the payment aspect of the parties' employment relationship, even if that agreement contemplates that the employee will be assigned to various jobs that will involve differing pay rates and hours. When such an overarching agreement exists, a new "wage earning agreement" is not formed each time an employee's job assignment results in the employee working additional (or fewer) hours or earning more (or less) money for each hour worked. Rather, the "most recent wage earning agreement" is the most recent *general* agreement between the worker and employer, and it does not necessarily "change" each time the

employee is sent on a different job assignment.[6] Consequently, when a worker employed under such an agreement is injured, the worker's temporary disability compensation will be based on his or her average weekly earnings "for the weeks worked under [that] most recent wage earning agreement," OAR 436-060-0025(5)(a)(B)(ii), taking into account all of the jobs to which the worker has been assigned, with their associated hours and wage rates. The result is that the worker will be compensated based on an average rate that most closely approximates the average wage that the worker might have expected to earn in the future, had the injury not occurred, rather than the compensation either being unrepresentatively high (if the worker was injured on a prevailing wage rate job) or unrepresentatively low (if the worker was injured on a lower paying job), as it would be if the rule operated as claimant contends.

Nor are we persuaded by claimant's argument that ORS 656.210(2)(d)(A) requires us to interpret the rule so that a worker's "average weekly wage [is] calculated based on [the] wage he was earning at the job he was working on that caused his injury." The statutory provision on which claimant relies provides that benefits due an injured worker "shall be based on the wage of the worker at the time of injury." ORS 656.210(2)(d)(A).

We reject claimant's argument regarding the significance of that provision for two reasons. First, ORS 656.210(2)(d)(A) does not define "time of injury" as the precise *moment* of injury, as claimant suggests. Rather, given that other subsections of the statute refer to the worker's weekly wage, the statutory reference to "the wage * * * at the time of injury" necessarily refers to the worker's earnings during a period of time, not just in the moment.[7] Second,

[6] Certainly an employee and worker *could* form a relationship in which they entered into a specific "wage earning agreement" each time the employer assigned the worker to a particular job site, or changed the worker's hours or pay rate in some other way. Our point is only that when an employer and worker are parties to a more general employment agreement that provides that the worker will be assigned to various jobs at various rates of pay, a new wage earning agreement does not spring into being—as a matter of law—each time the worker starts a different job assignment.

[7] Of course, a single wage earning agreement—the most recent wage earning agreement—must remain in effect during the period of time over which wages are averaged. If the employer and worker enter a new wage earning agreement, only

claimant reads the statutory provision out of context. That provision—ORS 656.210(2)(d)—follows an explanation of how the "weekly wage" is determined for a worker who is "regularly employed" in one job or who is employed in more than one job. The next subsection explains that for workers who are not regularly employed or whose remuneration, like claimant's, is "not based solely upon daily or weekly wages," the "methods for establishing the worker's weekly wage" will be established by rule. ORS 656.210(2)(e). That is what OAR 436-060-0025 has accomplished, and we see nothing in the rule, as we have interpreted it, that conflicts with the broad legislative directive that temporary disability compensation be based on the worker's wage at the time of injury.

As applied here, the board found that claimant and employer entered into a wage earning agreement in February 2008 (which was a change from the agreement that had existed before claimant's injury the previous year) that included an "expectation that he would be dispatched to different construction projects as needed and that his work hours and pay rate would be determined by the type of project involved." Claimant has not challenged that finding, which is sufficient to support the board's determination that the February agreement was "the most recent wage earning agreement" between claimant and employer. Moreover, as we have explained, neither ORS 656.210(2)(d)(A) nor OAR 436-060-0025 required the board to determine that the February 2008 wage earning agreement changed, and a new wage earning agreement was formed, when claimant was assigned to the Highway 97 project in March. Accordingly, the board did not err when it concluded that claimant's temporary disability compensation should be calculated based on his "average earnings for the weeks worked under" the February 2008 agreement, as OAR 436-060-0025(5)(a)(B)(ii) requires. It follows that the board also did not err in rejecting claimant's claims for a penalty and attorney fees.

Affirmed.

---

wages earned under that new agreement will figure into the calculation of the worker's average weekly wage. OAR 436-060-0025(5)(a)(B).